INGELS, Director of Motor Vehicles, et al.
v. BOTELER et al. (two cases).

In re RICHMAID CREAMERIES, Inc.

Nos. 8711, 8761.

Circuit Court of Appeals, Ninth Circuit.

Dec. 15, 1938.

U. S. Webb, Atty. Gen., of Cal., and John O. Palstine, Deputy Atty. Gen., of Cal., for appellants.

David Schwartz, of Los Angeles, Cal., for appellee.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

The Richmaid Creameries, Inc., filed its petition under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, in the court below on September 16, 1936, and on the same day John H. Chamness was appointed temporary trustee, with authority to operate the business of the debtor. Prior to September 16, 1936. The Richmaid Creameries, Inc., was engaged in the creamery business in Wilmington, California, owning certain milk and ice cream routes and making deliveries thereon and operating twenty-seven automobiles and trucks in the course of such business.

The temporary trustee began to operate the business and borrowed money for that purpose, but his first month of operation of the business resulted in a loss of $2,865. On December 22, 1936, the District Court entered an order directing liquidation of the assets of the debtor, continuing the trustee in office for that purpose, and referred the estate generally to the referee for further administration.

January 5, 1937, a schedule of assets and liabilities of Richmaid was filed, showing assets of $148,380.02, and liabilities of $87,089.64, including $2,000 borrowed by the trustee on certificates.

January 20, 1937, L. Boteler, appellee here, was appointed trustee in bankruptcy for the purpose of liquidating the assets of Richmaid.

During the months of January and February, 1937, and up to and including February 27, 1937, the temporary trustee and the trustee, respectively, continued to operate the business of Richmaid and to make the usual deliveries of milk and ice

cream on the aforesaid "routes." The trustee issued checks against the estate in payment of expenses in connection with the operation of the business. When there were insufficient funds ‘in the estate to pay the checks, the trustee, on some occasions, cashed the same out of his own personal funds and held the checks until there were sufficient funds in the bankrupt estate with which to pay the same.

The total receipts of the trustee from September 16, 1936, to January 19, 1937, were $70,006.23, and the total disbursements for the same period were $79,647.65; the total receipts from January 20, 1937, the date when the appellee assumed trusteeship of the estate of Richmaid, to February 4, 1937, were $7,899.61, while the total disbursements for the same period were $7,624.46.

Automobile license fees are due and payable in the state of California on the first day of January of each year, to be paid at the time of registration or renewal thereof. Sec. 3, Calif.Vehicle License Fee Act (Ch. 362, p. 1313, Cal.Stats.1935, as amended by St.1937, p. 62, § 2). Delinquency arises upon operation of a vehicle upon any highway of the State without the license fee having been paid and a penalty attaches if the fee is not paid within 30 days. Sec. 6, Ibid., as amended by St. 1937, p. 63, § 5. The penalty is by law added to the fee upon any application for annual renewal of registration made on or after February 5, unless the vehicle has not been operated on the highways of the state since the expiration date. Sec. 378(b), Calif.Vehicle Code, St.1935, p. 150. Section 379(a) of the California Vehicle Code, St.1935, p. 151, provides that every registration or transfer fee and any penalty added thereto, from the time the same became due, constitute a lien upon the vehicle for which due.

Continuously during the month of January, 1937, and to and including February 27, 1937, the temporary trustee and the trustee operated the Richmaid automobiles and trucks upon the public highways of the state of California, carrying on the business of Richmaid.

The trustee did not pay the California 1937 license fees upon said vehicles, in the amount of $410.90, prior to February 5, 1937. On February 28, 1937, the referee made an order confirming the sale of Richmaid's milk and ice cream delivery routes and certain equipment, for the sum of $8260. This was the first property sold in liquidation, and the trustee did not thereafter attempt to operate the business of the debtor.

On or about February 27, 1937, 23 days after the statutory delinquency date, the trustee made application to the Department of Motor Vehicles of the State of California for 1937 licenses for the motor vehicles referred to, tendering the fees, but not the penalties demanded by the statutes of California for violation of its motor vehicle license laws. Because of the refusal of the trustee to pay the penalties required by the laws of the state of California, the 1937 licenses were not issued to him.

Thereafter, the trustee filed a petition with the referee for an order requiring the appellants here to show cause why the penalties assessed against the Richmaid motor vehicles should not be set aside and, further, to show cause why the 1937 license plates for said motor vehicles should not be issued to the trustee upon payment of the fees, exclusive of the penalties. Following this, the trustee filed an amended petition to require the appellants to show cause why they should not be required immediately to file such claims as they assert against the bankrupt estate or be forever barred from asserting such claims against said estate or against the motor vehicles, and further requiring said appellants to show cause why the trustee should not be authorized to sell the motor vehicles free and clear from any and all liens claimed by the motor vehicle department of the state of California upon said vehicles.

The referee made certain findings of fact, most of which are set forth above, but, in addition, the referee made findings as follows:

"The court further finds that the trustee herein had absolutely no funds in his possession between the date of his appointment on the 20th day of January, 1937 and the 27th day of February, 1937 with which to purchase the 1937 license plates for said motor vehicles * * *."

"The court further finds that at no time prior to the 27th day of February, 1937, did said trustee have funds with which to pay said registration and license fees owing upon said motor vehicles and that the same condition existed from the date that the order of liquidation was made herein, to-wit, the 22nd day of December, 1936 to the date of the appointment of L. Boteler, the present trustee on the 20th day of January,

1937. That during the month of January, 1937 and up to the said 27th day of February, 1937, the trustee herein and his predecessor operated said vehicles upon the public highways of the State of California without the payment of any registration and license fees for said year."

The referee made an order setting aside all penalties assessed against the motor vehicles and directed the trustee to sell said motor vehicles free and clear of any and all liens thereon arising by reason of the failure of the trustee to pay the motor vehicle license tax provided under the laws of the State of California and commanding Ingels and Deems to file claims in the bankruptcy proceeding for the registration and license fees upon said motor vehicles within 30 days from the date of the order "or be forever barred from asserting any claim or claims for taxes and/or registration or license fees against said motor vehicles and against this bankrupt estate or the trustee herein, either in his official capacity as such trustee or individually." The appellants petitioned the District Court to review the said order and the District Judge denied the petition and confirmed the order of the referee.

In addition, the trustee had petitioned the referee for an order directing the appellants to receive the principal of the license fees in full payment of any and all sums owing by Richmaid on said motor vehicles and enjoining collection or attempted collection by them of any penalties which the statutes of the state of California compelled them to collect. The referee declined to include such mandate in his order, and the trustee made application to the District Court, for a mandatory injunction directed to the appellants requiring them to receive the statutory fees less the penalties and to deliver the license plates to the trustee, which issued the order as prayed.

An appeal was allowed Ingels, Director of Motor Vehicles of the State of California, and Deems, as Registrar of Motor Vehicles, from each order.

The sole question in each case is whether the lower court committed error in entering the order appealed from.

The two cases involved the identical facts, were consolidated for briefing and hearing and are disposed of in this opinion.

The referee made two findings of fact, set forth above, to the effect that the trustee had no funds with which to pay the license and registration fees prior to February 5, 1937. These findings are contrary to the true facts. Actually during the period January 20, 1937, to February 4, 1937, large sums of money were received by the trustee, all of which were received and paid out *before* the license fees became subject to penalty, without taking into account the moneys received and disbursed in the operation of the business from January 1, to January 19, 1937.

■ Whether a debt or claim is provable in bankruptcy turns upon its status at the time of the filing of the petition (Sec. 760, Remington on Bankruptcy, 4th ed.); claims not owing at the time of filing of the petition are not provable. Sec. 807, Remington; Colman Co. v. Withoft, 9 Cir., 195 F. 250, 252; Cantor v. Cherry, 3 Cir., 73 F.2d 188. Section 1(9) of the Bankruptcy Act, 11 U.S.C.A. § 1(9), includes, in the definition of "creditor" anyone who owns a demand or claim provable in bankruptcy. While actually neither demand nor claim, taxes are "provable" in their nature. Sec. 845, Remington.

If the taxes in question were due and payable at the time of the filing of the petition, they would be provable, and it follows, under Section 57j of the Act, 11 U.S.C.A. § 93(j), penalties thereon would not be allowable, save to the extent permitted by said section.

■ But here we are confronted with a different set of facts. These taxes became fixed by reason of the operation of the business by the trustees, after the date of the filing of the petition and after the date of what in effect amounted to an adjudication. It should be obvious that a debt or claim created thereby was not provable, not being in existence at the time of the filing of the petition and, therefore, not dischargeable.

■ The right of the trustee, under order of the court, to operate the business for a limited period cannot be challenged; but the estate, save as to existing lienholders, not consenting—of which there are apparently none here, is liable for the charges incurred, even to the extent of the depletion of the assets of the estate, even to the detriment of labor claimants. The reason is simple: The operation of the business in such situation is for the benefit of the creditors. Remington, Sec. 2662, 445, 446.

The motor vehicle license or registration fee is a privilege tax levied in exercise of the police power to control and regulate travel on the public highways. It is not considered as a tax on the motor vehicle itself, but for the privilege of using the highways. Blashfield, Cyc. of Automobile Law, Permanent Edition, Sec. 212, Vol. 1, p. 158. A license to operate a motor vehicle is granted under the inherent right of the state or municipality to regulate its use on the public highways or streets. Ibid., Sec. 211, p. 157. The only automobiles required to be registered under the California Motor Vehicle Act are vehicles to be used upon the public highway (Cal.Stats.1927, p. 1424, § 11; California Standard Finance Corp. v. Riverside Finance Co., 111 Cal.App. 151, 163, 295 P. 555); if the vehicles were not used, no registration fee would have fallen due under the law of California. But, in carrying on the business of Richmaid, the motor vehicles were operated upon the public highways of the state of California and thereby the registration and license fees attached. They were not paid, but became delinquent, and on February 5, 1937, the penalties prescribed by law applied. California Vehicle Code, § 370 et seq., St.1935, p. 147 et seq., California Vehicle License Fee Act, § 6, as amended.

The motor vehicles in question could not be operated in 1937 without incurring the license and registration fees. Necessarily, therefore, the fees were an expense of doing business and were chargeable against the estate. The trustee has the duty of seeking out and paying all taxes (Sec. 847, Remington). He knew, or should have known, that a license fee was required before the motor vehicles could be legally operated upon the public highways, although, if the motor vehicles had not been used the fees would not have become payable.

Were the motor vehicles operated by Richmaid itself, or any other person or corporation, there would be no question of liability for the penalties. Is a trustee operating a business absolved from compliance with law?

The trustee cites Section 57j of the Bankruptcy Act, 11 U.S.C.A. § 93(j), as authority for holding the penalty inapplicable. That section provides that "Debts owing to * * * a State * * * as a penalty or forfeiture shall not be allowed, except * * *" for pecuniary loss, costs and interest. We have already pointed out that the tax in question could not be a provable dischargeable claim. Obviously, the section refers to debts owing by the bankrupt and not by the trustee.

The normal course of procedure in bankruptcy is liquidation, not continuance of the business of the bankrupt. Where the business of the bankrupt is conducted for a limited period by the trustee, upon order of the court, the purpose is to benefit the creditors. The expenses of operation must be paid out of the estate. That the license and registration fees are legitimate expenses, there can be no question.

By the Act of June 18, 1934, 48 Stat. 993, 28 U.S.C.A. § 124a, a trustee who is authorized by any United States Court to conduct any business, and does so, is subject to all State and local taxes "applicable to such business the same as if such business were conducted by an individual or corporation." This is sufficient basis for the attachment of the penalty and lien.

While the property which was in possession of the bankrupt at the time of filing of the petition, or to which it was entitled, is regarded as in custodia legis, we have been cited to no authority which would prevent a lien granted by State law from attaching by reason of the operation of a business of a bankrupt by a trustee and a violation of the State law by that trustee. The general rule is that the law of the state will control as to the nature of a lien, its creation, the time of taking effect. Sec. 1891, Remington. Under 28 U.S.C.A. § 124a it follows that the lien in this case is valid.

The Supreme Court, in the case of Swarts v. Hammer, 194 U.S. 441, 444, 24 S.Ct. 695, 696, 48 L.Ed. 1060, said: "By the transfer to the trustee no mysterious or peculiar ownership or qualities are given to the property. It is dedicated, it is true, to the payment of the creditors of the bankrupt, but there is nothing in that to withdraw it from the necessity of protection by the state and municipality or which should exempt it from its obligations to either."

In State of California v. Hisey, 9 Cir., 84 F.2d 802, 805, a receivership case, we held that the appointment of a receiver by a court of equity could not have any effect upon the right of the State of California to collect penalties for unpaid taxes; that receivers had been compelled in numerous cases to pay penalties for nonpayment of

taxes which accrued subsequent to their appointment. We further held that: "If the penalty, as well as the tax, is a lien upon the property in the hands of a receiver, as the statutes of California provide, it is difficult to see how the payment of the penalty can be differentiated from the payment of the lien for the tax. * * * The penalty is a part of the tax. * * *" Compare Michigan v. Michigan Trust Co., 286 U.S. 334, 344, 52 S.Ct. 512, 76 L.Ed. 1136; People of New York v. Hopkins, 2 Cir., 18 F.2d 731, 733; McFarland v. Hurley, 5 Cir., 286 F. 365, 366; Coy v. Title Guarantee & Trust Co., 9 Cir., 220 F. 90, 92, L.R.A.1915E, 211.

This view is upheld by the United States Circuit Court of Appeals for the Second Circuit. In the case of In re Humeston, 83 F.2d 187, 189, that court said: "* * * Such taxes as fell due during the period of the trustee's occupation were part of the expenses of that occupation and should be borne by the estate. * * * When * * * the mortgagor's trustee continues the occupation, he necessarily means to exploit it for profit, and the gross returns must pay the running expenses. Thus taxes which became payable between November 1, 1933, and May 21, 1935, must be paid, and not only the entire face of these, but all interest and *penalties* accumulated upon them. It was the trustee's duty to pay them when they fell due, and the estate must suffer from his failure. * * *" [Italics supplied.]

Additional authority may be found In re Preble Corporation, D.C.Me., 15 F.Supp. 775, 776, affirmed on different grounds Preble Corp. v. Wentworth, 1 Cir., 84 F.2d 73, certiorari denied 299 U.S. 575, 57 S.Ct. 39, 81 L.Ed. 424:

"Generally speaking, property in the custody and control of federal receivers and trustees is subject to taxation under state law the same as any other property. [Cases cited.] * * *

"A proper performance of the duty to protect the property intrusted to its agents by the court requires the payment of taxes. In this case taxes are a part of the necessary expense of carrying on the business.

" 'The trustee is subject to all state and local taxes which are applicable to the business which he conducts.'

" 'If the trustee fails to pay taxes in a proper case, although he has sufficient funds to do so, and thereby subjects the estate to interest and penalties, he will be surcharged to the extent of such interest and penalties.' Gerdes on Corporate Reorganizations, vol. 1, § 400."

Insofar as the decision In re Messenger's Merchants Lunch Rooms, Inc., 7 Cir., 85 F.2d 1002, cited by the appellee as authority for affirmance, is in conflict herewith, it is expressly disapproved.

The order of the District Court is reversed in each case, with directions to order the registration and license fees and accrued penalties paid, or, in the alternative, to permit the motor vehicles to be disposed of subject to the lien of the State of California for the unpaid taxes and penalties.

The orders of the court below are reversed.